Isaac P. Hernandez (SBN 025537)
Hernandez Law Firm, PLC
5330 N. 12th St.
Phoenix, Arizona 85014
Tel:   602.753.2933
Fax:   855.592.5876
Email: isaac@hdezlawfirm.com

*Attorney for Steven Peralta*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Peralta, | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| Intel Corp., a Delaware corporation, | |
| Defendant. | |

**COMES NOW** Plaintiff Steven Peralta ("Plaintiff") in support of his Complaint against Defendant Intel Corporation ("Intel" or "Defendant"), and hereby alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff asserts claims against Defendant under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"), 42 U.S.C. §1981 ("§1981"), and the American with Disabilities Act, 42 U.S.C. §12111, *et seq.* ("ADA"), for injuries resulting from Defendant's unlawful conduct, including but not limited to: (1) discriminating against Plaintiff because of his disability, race, national origin, and/or ancestry and (2) retaliation.

2. Plaintiff seeks back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and such further relief as the Court deems just and proper under the circumstances.

## PARTIES

3. Plaintiff has at all times relevant to this matter been a resident of Maricopa County, Arizona.

4. Defendant has at all times relevant to this matter been a Delaware corporation doing business in Arizona, and an employer with over 500 employees.

## JURISDICTION AND VENUE

5. This Court has personal and subject matter jurisdiction over the parties and issues in this Complain, pursuant to 28 U.S.C. §1331.

6. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b), because the acts, events, or omissions giving rise to Plaintiff's claims occurred in whole, or in part, in Maricopa County, Arizona.

## FACTUAL BACKGROUND

7. Plaintiff, a Hispanic male of Mexican American descent, served in two tours in Iraq between 2003 and 2006 as a member of the U.S. Army.

8. Plaintiff began his employment with Intel in 2012. From 2016 until March 2021 worked as a Technician in the Yield Department.

9. Beginning in or around 2017, Plaintiff has been assigned the same duties and responsibilities as other employees classified as Engineers who received substantially higher pay than Plaintiff.

10. Based on clear objective standard performance metrics used by Intel, Plaintiff have outperformed other employees who are performing the same work as him, but who were classified as mid-level Engineers and receiving higher pay than Plaintiff.

11. Intel's Engineers are assigned a level between Level 3 and 10. Engineer Levels 5-6 are considered mid-level Engineers. Mid-level engineers typically earned salaries between $90,000.00 and $120,000.00.

12. Despite outperforming his peers who were classified as mid-level Engineers, Plaintiff was not selected for several mid-level Engineer positions that he

applied for.

13. In or around July of 2019, when Plaintiff complained about these hiring practices to my immediate supervisor, and compared his work and performance to the work and performance of mid-level Engineers that Intel had been hiring to perform the same work that Plaintiff had been performing since 2017, Plaintiff's supervisor told Plaintiff "understand [his] role" and not to compare himself to the Engineer he was assigned to replace but to the other Hispanic employees who worked in another department as technicians and were paid an hourly rate.

14. Since July 2019 Plaintiff initiated several formal complaints related to Intel's hiring practices.

15. In or around September/October 2019, Plaintiff applied for and was not selected for two mid-level Engineering positions.

16. Due to increased hostility and scrutiny Plaintiff had begun to experience from his immediate supervisor, and Intel's apparent failure to adequately investigate and respond to Plaintiff's complaints, Plaintiff requested medical leave.

17. As part of Plaintiff's initial request for medical leave and subsequent requests for extensions of medical leave, Plaintiff notified Intel and its agents of his disability and mental health conditions, including PTSD, depression, and severe anxiety.

18. Plaintiff was on medical leave from December 2019 until November 2020.

19. Upon Plaintiff's return to work in November 2020, Plaintiff learned that that his job duties had been modified and his responsibilities reduced, e.g., his job role as an Equipment Owner was reduced to support an Equipment Owner.

20. Upon Plaintiff's return to work in November 2020, he was required to attend frequent one-on-one meetings with the Yield Department Manager.

21. On more than one occasion Plaintiff notified Intel of his reluctance to participate in one-on-one meetings with the Yield Department Manager or with Human Resources representatives.

22. On more than one occasion Intel denied Plaintiff's requests to have his

counsel participate in meetings with his manager and Human Resources personnel as an accommodation for his medical condition.

23. Since September/October 2019 Plaintiff applied and was not selected for several more mid-level Engineer positions in the Yield Department doing the same work that Plaintiff successfully performed in 2017/2018, and the same work as the mid-level Engineers that were hired to do the same work that Plaintiff successfully performed in 2017/2018.

24. In or around January 2021, during a prescreening one-on-one interview that Plaintiff had with the Yield Department Manager for one of the positions that Plaintiff applied for, the Yield Department Manager questioned Plaintiff's ability to perform the necessary level of computer coding required for the position, and accused Plaintiff of "stealing" or fabricating his coding samples. During a subsequent formal interview for the same position the Yield Department Manager required Plaintiff to perform a live coding demonstration.

25. In March 2021 Plaintiff was offered an Engineer Level 3 position in another department, which Plaintiff accepted. As an Engineer Level 3 Plaintiff will earn a salary of around $70,000.00, which is roughly the same annual income Plaintiff would have earned as a Technician.

26. Since 2017 Intel has hired several non-Hispanic Engineers who were less qualified for their position than Plaintiff.

27. On or around May 1, 2020, Plaintiff filed an administrative charge with the U.S. Equal Employment Opportunity Commission alleging discrimination based on race and national origin, and retaliation (Charge No. 540-2020-01206).

28. On or around February 22, 2021, Plaintiff filed a second administrative charge (Charge No. 540-2021-01909) alleging discrimination based on race, national origin, and disability, and retaliation.

29. No more than 90 days have passed since Plaintiff received the Notice of Right to Sue for the above-referenced administrative charges.

## FIRST CAUSE OF ACTION

### Title VII-Discrimination Based on Race and/or National Origin

30. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

31. Upon information and belief, Plaintiff was subjected to less favorable treatment than similarly situated coworkers because of his race, national origin, and/or ancestry, including but not limited to, heightened scrutiny, constant criticism and subjecting him to unfavorable working conditions compared to similarly situated coworkers who engaged in the same or similar conduct.

32. Defendant maintained and implemented unlawful discriminatory practices and, by the use of facially neutral employment practices and on other occasions, by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged, or disciplined, caused adverse and discriminatory impact on Hispanic employees, including Plaintiff.

33. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, nervousness, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

34. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Title VII-Retaliation

35. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

36. During the course of Plaintiff's employment with Defendant, Plaintiff was

retaliated against in violation of Title VII and subjected to less favorable terms and conditions of employment than similarly situated employees because he complained about unlawful discrimination.

37. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

38. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### §1981-Discrimination Based on Race and/or Ancestry

39. Plaintiff incorporates by reference the preceding paragraphs in the Complaint as if specifically set forth herein.

40. Upon information and belief, Defendant subjected Plaintiff to less favorable treatment than similarly situated coworkers because of his race and/or ancestry, including but not limited to, heightened scrutiny, constant criticism and subjecting him to more severe discipline compared to similarly situated coworkers who engaged in the same or similar conduct.

41. Defendant maintained and implemented unlawful discriminatory practices and, by the use of facially neutral employment practices and on other occasions, by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged, or disciplined, caused adverse and discriminatory impact on Hispanic employees, including Plaintiff.

42. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other

pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

43. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## §1981-Retaliation

44. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

45. During the course of Plaintiff's employment with Defendant, Plaintiff was retaliated against in violation of §1981 and subjected to less favorable terms and conditions of employment than similarly situated employees because he complained about unlawful discrimination.

46. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

47. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## ADA-Discrimination Based on Disability

48. Plaintiff incorporates by reference the preceding paragraphs in the Complaint as if specifically set forth herein.

49.     Plaintiff was discriminated against because of an actual or perceived disability, or record of disability.

50.     Upon information and belief, Defendant subjected Plaintiff to less favorable treatment than similarly situated coworkers because of his actual or perceived disability, or his record of disability, including but not limited to, heightened scrutiny, constant criticism and subjecting him to more severe discipline compared to similarly situated coworkers who engaged in the same or similar conduct.

51.     Defendant maintained and implemented unlawful discriminatory practices and, by the use of facially neutral employment practices and on other occasions, by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged, or disciplined, caused adverse and discriminatory impact on employees with actual or perceived disabilities, including Plaintiff.

52.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

53.     The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**ADA-Failure to Provide Reasonable Accommodation**

54.     Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

55.     Defendant's supervisors and managers were aware of Plaintiff's medical condition and/or Plaintiff's record of disability.

56.     Defendant failed to provide Plaintiff with reasonable accommodation to

perform his duties when he returned to work from medical leave in November 2020.

57. Defendant denied Plaintiff's request for reasonable accommodation when he requested to have a personal representative present during one-on-one meetings that he was required to participate in after he returned from medical leave in November 2020.

58. Upon information and belief, despite Intel's knowledge of Plaintiff's disability, Intel failed to consider or provide reasonable accommodation for Plaintiff's disability in determining his qualifications for positions he applied for since November 2019.

59. Upon information and belief, Defendant subjected Plaintiff to less favorable treatment than similarly situated coworkers because of his actual or perceived disability, or his record of disability, including but not limited to, heightened scrutiny, constant criticism and subjecting him to more severe discipline compared to similarly situated coworkers who engaged in the same or similar conduct.

60. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

61. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for relief against Defendant, jointly and severally, as follows:

    A.    Award Plaintiff back pay, front pay, and any other available compensatory damages, as may be determined at trial;

    B.    Award Plaintiff general damages for him emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering,

inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life, as may be determined at trial;

C. Award Plaintiff punitive damages as may be determined at trial;

D. Order Defendant to pay reasonable attorney's fees and costs;

E. Order Defendant to pay pre-judgment interest on all amounts for which pre-judgment interest is legally allowable, at the highest lawful rate;

F. Order Defendant to pay post-judgment interest at the highest lawful rate for all amounts, including attorney fees, awarded against Defendant; and

G. Order all other relief, whether legal, equitable or injunctive, as may be necessitated to effectuate full relief to Plaintiff.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully submitted this 29th day of April 2021.

                                    Hernandez Law Firm, PLC

                                    By: /s/ Isaac P. Hernandez
                                               Isaac P. Hernandez
                                               Attorney for Plaintiff

Hernandez Law Firm, PLC
5330 N. 12th St.
Phoenix, Arizona 85014
602.753.2933