Isaac P. Hernandez (SBN 025537)
Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
Tel:    602.753.2933
Fax:    855.592.5876
Email: isaac@hdezlawfirm.com

*Attorney for Steven Peralta*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Steven Peralta, | Case No.  21-CV-00762-PHX-SMB |
| Plaintiff, | **AMENDED COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| Intel Corp., a Delaware corporation, | |
| Defendant. | |

**COMES NOW** Plaintiff Steven Peralta ("Plaintiff") in support of his Amended Complaint against Defendant Intel Corporation ("Intel" or "Defendant"), and hereby alleges as follows:

**NATURE OF THE ACTION**

1.      Plaintiff asserts claims against Defendant under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"), 42 U.S.C. §1981 ("§1981"), and the American with Disabilities Act, 42 U.S.C. §12111, *et seq.* ("ADA"), for injuries resulting from Defendant's unlawful conduct, including but not limited to: (1) discriminating against Plaintiff because of his disability, race, national origin, and/or ancestry and (2) retaliation.

2.      Plaintiff seeks back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and such further relief as the Court deems just and proper under the circumstances.

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

**PARTIES**

3.     Plaintiff has at all times relevant to this matter been a resident of Maricopa County, Arizona.

4.     Defendant has at all times relevant to this matter been a Delaware corporation doing business in Arizona, and an employer with over 500 employees.

**JURISDICTION AND VENUE**

5.     This Court has personal and subject matter jurisdiction over the parties and issues in this Complain, pursuant to 28 U.S.C. §1331.

6.     Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b), because the acts, events, or omissions giving rise to Plaintiff's claims occurred in whole, or in part, in Maricopa County, Arizona.

**FACTUAL BACKGROUND**

7.     Plaintiff, a Hispanic male of Mexican American descent, served in two tours in Iraq between 2003 and 2006 as a member of the U.S. Army.

8.     Since Plaintiff returned from Iraq he has received ongoing treatment and therapy for PTSD and depression.

9.     Plaintiff began his employment with Intel in 2012.  From 2016 until March 2021 worked as a Technician in the Yield Department.

10.     Beginning in or around 2017, Plaintiff has been assigned the same duties and responsibilities as other employees classified as Engineers who received substantially higher pay than Plaintiff.

11.     Based on clear objective standard performance metrics used by Intel, Plaintiff has outperformed other employees who are performing the same work as him, but who were classified as mid-level Engineers and receiving higher pay than Plaintiff.

12.     Intel's Engineers are assigned a level between Level 3 and 10.   Engineer Levels 5-6 are considered mid-level Engineers.  Mid-level engineers typically earned salaries between $90,000.00 and $120,000.00.

- 2 -

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

13.     Despite outperforming his peers who were classified as mid-level Engineers, Plaintiff was not selected for several mid-level Engineer positions that he applied for since 2016.

14.     Since 2017 Intel has hired several non-Hispanic Engineers who were less qualified for their position than Plaintiff.

15.     Beginning in 2019 Plaintiff initiated several formal complaints related to Intel's hiring practices.

16.     In or around July of 2019, when Plaintiff complained about these hiring practices to his immediate supervisor, and compared his work and performance to the work and performance of mid-level Engineers that Intel had been hiring to perform the same work that Plaintiff had been performing since 2017, Plaintiff's supervisor told Plaintiff "understand [his] role" and not to compare himself to the Engineer he was assigned to replace but to the other Hispanic employees who worked in another department as technicians and were paid an hourly rate.

17.     In or around September/October 2019, Plaintiff applied for and was not selected for two mid-level Engineering positions.

18.     Due to increased hostility and scrutiny Plaintiff had begun to experience from his immediate supervisor, and Intel's apparent failure to adequately investigate and respond to Plaintiff's complaints, Plaintiff requested medical leave.

19.     As part of Plaintiff's initial request for medical leave and subsequent requests for extensions of medical leave, Plaintiff notified Intel and its agents of his disability and mental health conditions, including PTSD, depression, and severe anxiety.

20.     Plaintiff was on medical leave from December 2019 until November 2020.

21.     Upon Plaintiff's return to work in November 2020, Plaintiff learned that his job duties had been modified and his responsibilities reduced, e.g., his job role as an Equipment Owner was reduced to support an Equipment Owner.

22.     The duties that were assigned to Plaintiff in the Yield Department prior to going on medical leave were assigned to a mid-level Engineer.

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2935

23.     Upon Plaintiff's return to work in November 2020, he was required to attend frequent one-on-one meetings with the Yield Department Manager.

24.     On more than one occasion Plaintiff notified Intel of his reluctance to participate in one-on-one meetings with the Yield Department Manager (Chyi Hwang Lim) or with Human Resources representatives, due in part to his pending legal claims and because the one-on-one meetings were triggering severe anxiety and stress (which Intel knew or should have known was related to his medical condition).

25.     Mr. Lim used these one-on-one meetings to question Plaintiff's credentials and competence, and repeatedly directed Plaintiff to apply for non-engineering positions outside the Yield Department.

26.     On more than one occasion Intel denied Plaintiff's requests to have his counsel participate in meetings with his manager and Human Resources personnel as an accommodation for his medical condition.

27.     Since September/October 2019 Plaintiff applied for and was not selected for several more mid-level Engineer positions in the Yield Department doing the same work that Plaintiff successfully performed in 2017/2018, and the same work as the mid-level Engineers who were hired to do the same work that Plaintiff had successfully performed in the Yield Department until his medical leave in December 2019.

28.     In or around December 2020, Plaintiff applied for an Engineer position in the Yield Department that was vacated by one of two engineers that were hired to perform Plaintiff's duties in the Yield Department at or around the time Plaintiff went on medical leave.

29.     In or around January 2021, during a prescreening one-on-one interview that Plaintiff had with the Yield Department Manager for one of the Engineer positions that Plaintiff applied for, the Yield Department Manager questioned Plaintiff's ability to perform the necessary level of computer coding required for the position, and accused Plaintiff of "stealing" or fabricating his coding samples.  During a subsequent formal interview for the same position the Yield Department Manager required Plaintiff to

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

perform a live coding demonstration.

30.    Plaintiff asked HR to review Plaintiff's coding samples and HR determined that Plaintiff's code was not stolen.  However, Intel HR did not require Mr. Lim apologize for his false and defamatory statements, and to the best of Plaintiff's knowledge, Mr. Lim was not disciplined or counseled in any way.

31.    In January 2021 Plaintiff learned that he was not selected for the Engineer position in the Yield Department.

32.    In March 2021, after learning that he (Plaintiff) was not selected for Engineer position in the Yield Department, Plaintiff had a meeting with Intel HR Manager Douglas Britton to discuss Plaintiff's concerns with the selection process and Intel's hiring practices.

33.    During Plaintiff's meeting with Mr. Britton, Plaintiff asked why Intel was requiring or preferring applicants with masters degrees and PhDs for engineering positions at Plaintiff's facility and other facilities in the U.S., when vacancy announcements for the same engineering positions with the same responsibilities and same equipment at facilities in Asia (*e.g.*, Vietnam and Malaysia), had no formal education requirements or only required or preferred bachelor degrees.  Mr. Britton acknowledged Intel's policy and practice of having different education requirements for U.S. based engineering positions, and advised Plaintiff to submit his complaints to elected officials.

34.    In February 2021 Plaintiff applied for a Grade 5 Engineer position in the ATTD Integration Department.  Plaintiff was selected for the position posted as a Grade 5 Engineer but the offer Plaintiff received from Intel was only for a Grade 3 Engineer, and the salary Plaintiff was offered was less than the salary Plaintiff would have received as a Grade 5 Engineer.

35.    Despite telling his (Plaintiff's) new manager and HR that he had previously been assigned Grade 5/6 Engineer level job roles, Intel said it would not recognize his prior job assignments and that Plaintiff was not eligible for Grade 5 Engineer title or salary.

36.     As a Grade 3 Engineer Plaintiff earned a salary of around $70,000.00, which is roughly the same annual income Plaintiff was earning as a Technician.

37.     Plaintiff accepted the offer for a Grade 3 Engineer after discussing his duties and reaching an agreement with his new manager in the Integration Department, where Plaintiff was told that as a Grade 3 Engineer he would be learning the Engineer role in the Integration Department, that he would not be responsible for same job duties and scope of work that were included in the job posting for the Grade 5 Engineer, and that he would not be asked to lead any projects as a Grade 3 Engineer.

38.     Within days after Plaintiff accepted the position in the Integration Department, Plaintiff learned that his old manager in the Yield Department (Chyi Hwang Lim) hired two mid-level Engineers and an Engineer Intern to perform the same duties that Plaintiff was assigned as a Technician prior to his medical leave.

39.     Even though Mr. Lim and HR knew Plaintiff had been applying for Engineer positions in the Yield Department and that Plaintiff had been assigned job roles and duties of Defect Reduction Engineer and Equipment Engineer in the Yield Department, neither Mr. Lim nor anyone in HR told Plaintiff or gave him any notice that Intel had created two Engineer positions in the Yield Department they were trying to fill.

40.     In May 2021, after about two months in Plaintiff's new position in the Integration Department, Plaintiff started receiving assignments that were beyond Plaintiff's scope of work as a Grade 3 Engineer.  When Plaintiff complained to his manager and HR, Plaintiff was told that there was nothing they could do to adjust his title or salary.

41.     At or around this time (May/June 2021), Plaintiff's manager told Plaintiff that he (Plaintiff's manager) had received an internal report from Intel that identified Plaintiff as an employee whose salary and compensation was less than what it should be.

42.     Unable to cope with the unabated discrimination, retaliation, and harassment, Plaintiff felt compelled to resign from his employment in July 2021.

43.     Accordingly, Plaintiff alleges that the was constructively discharged from

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

his employment with Intel.

44.    Upon information and belief, Intel's policies and hiring practices, e.g., requiring/preferring graduate degrees for positions in the U.S. while not requiring/preferring graduate degrees for those same positions outside the U.S., have discriminated against Plaintiff and other U.S. based minority applicants.

## FIRST CAUSE OF ACTION

### Title VII-Discrimination Based on Race and/or National Origin

45.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

46.    Upon information and belief, Plaintiff was subjected to less favorable treatment than similarly situated coworkers because of his race, national origin, and/or ancestry, including but not limited to, heightened scrutiny, constant criticism and subjecting him to unfavorable working conditions compared to similarly situated coworkers who engaged in the same or similar conduct.

47.    Defendant maintained and implemented unlawful discriminatory practices and, by the use of facially neutral employment practices and on other occasions, by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged, or disciplined, caused adverse and discriminatory impact on Hispanic employees, including Plaintiff.

48.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was compelled to resign from his employment with Defendant.

49.    Accordingly, Plaintiff alleges that the was constructively discharged from his employment with Defendant.

50.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, nervousness, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

the loss of enjoyment of life.

51.     The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

<b>SECOND CAUSE OF ACTION</b>

<b>Title VII-Retaliation</b>

52.     Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

53.     During the course of Plaintiff's employment with Defendant, Plaintiff was retaliated against in violation of Title VII and subjected to less favorable terms and conditions of employment than similarly situated employees because he complained about unlawful discrimination.

54.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was compelled to resign from his employment with Defendant.

55.     Accordingly, Plaintiff alleges that the was constructively discharged from his employment with Defendant.

56.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

57.     The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

<b>THIRD CAUSE OF ACTION</b>

<b>§1981-Discrimination Based on Race and/or Ancestry</b>

58.     Plaintiff incorporates by reference the preceding paragraphs in the

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

Complaint as if specifically set forth herein.

59.     Upon information and belief, Defendant subjected Plaintiff to less favorable treatment than similarly situated coworkers because of his race and/or ancestry, including but not limited to, heightened scrutiny, constant criticism and subjecting him to more severe discipline compared to similarly situated coworkers who engaged in the same or similar conduct.

60.     Defendant maintained and implemented unlawful discriminatory practices and, by the use of facially neutral employment practices and on other occasions, by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged, or disciplined, caused adverse and discriminatory impact on Hispanic employees, including Plaintiff.

61.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was compelled to resign from his employment with Defendant.

62.     Accordingly, Plaintiff alleges that the was constructively discharged from his employment with Defendant.

63.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

64.     The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### §1981-Retaliation

65.     Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

- 9 -

66.     During the course of Plaintiff's employment with Defendant, Plaintiff was retaliated against in violation of §1981 and subjected to less favorable terms and conditions of employment than similarly situated employees because he complained about unlawful discrimination.

67.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was compelled to resign from his employment with Defendant.

68.     Accordingly, Plaintiff alleges that the was constructively discharged from his employment with Defendant.

69.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

70.     The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### ADA-Discrimination Based on Disability

71.     Plaintiff incorporates by reference the preceding paragraphs in the Complaint as if specifically set forth herein.

72.     Plaintiff was discriminated against because of an actual or perceived disability, or record of disability.

73.     Upon information and belief, Defendant subjected Plaintiff to less favorable treatment than similarly situated coworkers because of his actual or perceived disability, or his record of disability, including but not limited to, heightened scrutiny, constant criticism and subjecting him to more severe discipline compared to similarly situated coworkers who engaged in the same or similar conduct.

- 10 -

74.     Defendant maintained and implemented unlawful discriminatory practices and, by the use of facially neutral employment practices and on other occasions, by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged, or disciplined, caused adverse and discriminatory impact on employees with actual or perceived disabilities, including Plaintiff.

75.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was compelled to resign from his employment with Defendant.

76.     Accordingly, Plaintiff alleges that the was constructively discharged from his employment with Defendant.

77.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

78.     The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**ADA-Failure to Provide Reasonable Accommodation**

79.     Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

80.     Defendant's supervisors and managers were aware of Plaintiff's medical condition and/or Plaintiff's record of disability.

81.     Defendant failed to provide Plaintiff with reasonable accommodation to perform his duties when he returned to work from medical leave in November 2020.

82.     Defendant denied Plaintiff's request for reasonable accommodation when he requested to have a personal representative present during one-on-one meetings that he

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

- 11 -

was required to participate in after he returned from medical leave in November 2020.

83.     Upon information and belief, despite Intel's knowledge of Plaintiff's disability, Intel failed to consider or provide reasonable accommodation for Plaintiff's disability in determining his qualifications for positions he applied for since November 2019.

84.     Upon information and belief, Defendant subjected Plaintiff to less favorable treatment than similarly situated coworkers because of his actual or perceived disability, or his record of disability, including but not limited to, heightened scrutiny, constant criticism and subjecting him to more severe discipline compared to similarly situated coworkers who engaged in the same or similar conduct.

85.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was compelled to resign from his employment with Defendant.

86.     Accordingly, Plaintiff alleges that the was constructively discharged from his employment with Defendant.

87.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

88.     The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for relief against Defendant, jointly and severally, as follows:

A.     Award Plaintiff back pay, front pay, and any other available compensatory damages, as may be determined at trial;

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

B.     Award Plaintiff general damages for him emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life, as may be determined at trial;

C.     Award Plaintiff punitive damages as may be determined at trial;

D.     Order Defendant to pay reasonable attorney's fees and costs;

E.     Order Defendant to pay pre-judgment interest on all amounts for which pre-judgment interest is legally allowable, at the highest lawful rate;

F.     Order Defendant to pay post-judgment interest at the highest lawful rate for all amounts, including attorney fees, awarded against Defendant; and

G.     Order all other relief, whether legal, equitable or injunctive, as may be necessitated to effectuate full relief to Plaintiff.

**JURY DEMAND**

Plaintiff requests a jury trial.

Respectfully submitted this 4th day of March 2022.

                    Hernandez Law Firm, PLC

                    By: /s/ Isaac P. Hernandez
                         Isaac P. Hernandez
                         Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2022, a copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, sent to all parties of record by operation of the Court's electronic filing system.


/s/ Isaac P. Hernandez